**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TAZENA KENNEDY,

        Plaintiff,

vs.                                               Case No. 3:11-cv-660-J-37TEM

UNITED OF OMAHA LIFE INSURANCE
COMPANY,

        Defendant.

**ORDER**

This cause is before the Court on the following:

1.     The Administrative Record[1] (Docs. S-1, S-2), filed under seal March 30, 2012;

2.     Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 18), filed March 30, 2012;

3.     Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 19), filed March 30, 2012;

4.     Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Doc. 20), filed April 30, 2012;

5.     Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 21), filed April 30, 2012;

6.     Report and Recommendation (Doc. 22), filed July 6, 2012;

7.     Plaintiff's Response and Objection to Report and Recommendation (Doc.

---

[1] Because the Administrative Record is under seal, the Court will quote it only in as much detail as is necessary for the resolution of these Motions. (Doc. 17.) The Administrative Record will be cited herein as "AR."

23), filed July 20, 2012;

8. Affidavit of Vincent Ober, M.D.[2] (Doc. 24), filed July 20, 2012; and

9. Defendant's Opposition to Plaintiff's Response and Objections to Report and Recommendation on Cross Motions for Summary Judgment (Doc. 25), filed August 3, 2012.

Magistrate Judge Thomas E. Morris has submitted a report recommending that Defendant's Motion for Summary Judgment be granted and that Plaintiff's Motion for Summary Judgment be denied. (Doc. 22.) After an independent *de novo* review of the record in this matter, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation. The Court therefore adopts the Report and Recommendation and grants summary judgment in favor of Defendant.

## BACKGROUND

Plaintiff has a long history of asthma and related symptoms. (AR, p. 870.) In early 2010, Plaintiff was employed as a therapist. (*Id.* at 1162.) At that time, Plaintiff was insured by Defendant through her employer's benefits policy.[3] (*Id.* at 870, 1162.)

The Policy[4] included coverage for long-term disability benefits. (*Id.* at 20.) The Policy defined having a "disability" as being unable to perform one's regular occupation. (*Id.*) It defined "regular occupation" as the occupation "as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a

---

[2] When reviewing an objection to a Magistrate Judge's Report and Recommendation, the Court may either consider or decline to consider evidence not presented to the Magistrate Judge. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). Though the Court has independently considered this later-presented evidence, it does not change the Court's agreement with the Magistrate Judge's recommendation.

[3] This action arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*

[4] Group Policy No. GUPR-AA8W. (AR, p. 1.)

specific location or in a specific area or region." (*Id.* at 54.) Further, the Policy provided that disability benefits would end if the insured failed to receive regular medical care for the illness that caused the disability. (*Id.* at 37.)

On January 5, 2010, Plaintiff began to experience exacerbated asthma symptoms. (*Id.* at 1162.) Between January and June, Plaintiff sporadically attended work due to her symptoms and visits to her doctors and the hospital. (*Id.* at 863.) During this time period, Plaintiff was under the primary care of Dr. Vincent Ober, a family practitioner. (*Id.* at 983–1065.)

Dr. Ober prescribed Plaintiff medications for the treatment of her asthma. (*Id.* at 601–02.) However, Plaintiff was often noncompliant with taking all of her medications. (*Id.* at 594, 597, 600.) When Plaintiff did take her medications, her symptoms improved. (*Id.* at 557, 571, 586.)

Plaintiff claimed that her symptoms were caused, in part, by allergens at her workplace, including cigarette smoke, perfume, and cleaning products. (*Id.* at 563.) Though Plaintiff underwent allergen testing and was found to be allergic to certain things, Plaintiff was not tested for allergies to cigarette smoke, perfume, or cleaning products. (*Id.* at 953.) Further, Plaintiff saw a pulmonologist on June 2, who told Plaintiff that her symptoms were "not work related and suggested that she see an attorney." (*Id.* at 563, 568, 570.)

Dr. Ober then referred Plaintiff to Dr. Bruce Yergin, another pulmonologist, for a second opinion. (*Id.* at 563.) Dr. Yergin agreed with Dr. Ober's diagnosis of asthma and advised Plaintiff to continue taking her prescribed medications. (*Id.* at 351.) Plaintiff later saw Dr. Yergin for a follow-up, during which she underwent further testing. (*Id.* at 349.) Dr. Yergin (at the request of Dr. Ober) then wrote Plaintiff's employer a doctor's note

stating that "it would be helpful to limit her exposure to allergens in her environment." (*Id.* at 369, 1074.)

On June 9, Plaintiff submitted a claim for benefits, claiming to be disabled from her asthma symptoms as of January 5. (*Id.* at 1162.) Defendant agreed to pay Plaintiff temporary benefits for a two-month period beginning May 24 (the date the Policy's elimination period ended), while it investigated her claim. (*Id.* at 900.)

As part of its investigation, Defendant asked Dr. Ober to provide a statement regarding Plaintiff's symptoms, work restrictions, ability to function at work, and prognosis for recovery. (*Id.* at 1069–70.) Among other things, Dr. Ober stated the opinion that Plaintiff's prognosis was "good" and that if she could avoid her asthma triggers and take her medications, her symptoms would improve. (*Id.* at 1070.)

Defendant also sought input from Dr. Yergin, asking him to provide Plaintiff's medical records and to answer the question, "Would [Plaintiff] be able to work in her sedentary occupation if she was not exposed to respiratory irritants?" (*Id.* at 359.) Dr. Yergin answered that question in the affirmative. (*Id.*)

Plaintiff's last day of work was June 22. (*Id.* at 870.) In September, in an eight-page letter, Defendant denied Plaintiff's claim. (*Id.* at 885–92.) This determination was based, in part, on Dr. Yergin's opinion that Plaintiff would be able to work in her regular occupation in a normal workplace free of irritants. (*Id.* at 890.) However, as detailed in the letter, the determination was also based on Dr. Ober's statements, all of Plaintiff's medical records, and Plaintiff's own statements, among other things. (*Id.* at 886–87.)

The record shows that between August and December, Plaintiff did not visit Dr. Ober, Dr. Yergin, or the hospital, nor did she refill her medications. (*Id.* at 76, 79, 348, 890.) Plaintiff reinitiated treatment for her asthma in late December 2010, following that

4

five-month break. (*Id.* at 76.)

In January 2011, Plaintiff appealed the denial of her claim. (*Id.* at 346.) She submitted additional information from Dr. Ober, including the opinion that Plaintiff would need to take one- to two-hour lying-down breaks four times throughout the workday. (*Id.* at 768.) On the same form, however, Dr. Ober stated that Plaintiff could sit, stand, and walk for at least six hours out of the workday. (*Id.*)

In investigating Plaintiff's appeal, Defendant sought peer review from Dr. Benjamin Berg, an external pulmonologist. (*Id.* at 1312, 1356.) After reviewing all of the records, Dr. Berg agreed with Plaintiff's diagnosis of asthma and noted that her symptoms recurred, in part, due to her noncompliance with taking her medications. (*Id.* at 1358.) Dr. Berg specifically stated that "[t]here are no specific identified unique environmental occupational triggers which require restriction from working in any specific identified location." (*Id.* at 1359.)

Further, Dr. Berg took issue with Dr. Ober's opinion that Plaintiff needed one- to two-hour breaks four times daily. (*Id.*) Dr. Berg believed that such a restriction was unsupported by Plaintiff's condition as he saw it from her medical records. (*Id.*) Instead, he noted that Plaintiff's condition would support a restriction of Plaintiff needing to take a five-minute break after walking for more than 100 meters. (*Id.*)

Because Dr. Berg disagreed with Dr. Ober's opinion, Dr. Berg claims that he called Dr. Ober to discuss Plaintiff's condition and to determine if there were additional considerations that led Dr. Ober to form such an opinion. (*Id.* at 1361.) Dr. Ober allegedly told Dr. Berg that Plaintiff had instructed Dr. Ober not to discuss Plaintiff's condition. (*Id.*)

Dr. Ober now disputes that this exchange took place. (Doc. 24, ¶ 3.) He claims

5

instead that when Dr. Berg contacted him, he asked Dr. Berg to provide documentation authorizing Dr. Ober to release private patient information. (*Id.* ¶ 5.) Dr. Berg did not do so, and Dr. Ober therefore believed he was bound by medical privacy law not to disclose any information relating to Plaintiff. (*Id.* ¶¶ 5–6.) Dr. Ober alleges that Plaintiff did not instruct him not to cooperate with Dr. Berg. (*Id.* ¶ 7.)

Ultimately, Defendant upheld the denial of Plaintiff's claim in April 2011. (AR, pp. 60–66.) Having exhausted her administrative remedies, Plaintiff filed this case on July 6, 2011. (Doc. 2.) The parties made cross-motions for summary judgment on March 30, 2012. (Docs. 18, 19.) Those motions were referred to Magistrate Judge Thomas E. Morris, who recommended to this Court that summary judgment be granted in favor of Defendant. (Doc. 22.)

Plaintiff timely filed an objection to Magistrate Judge Morris' recommendation. (Doc. 23.) Specifically, Plaintiff objected to Magistrate Judge Morris' reliance on Dr. Berg's findings and his allegation that Plaintiff instructed Dr. Ober not to communicate with him. (*Id.* at 2.) Further, Plaintiff objects to Magistrate Judge Morris' finding that Plaintiff is fully capable of sedentary work. (*Id.*) Instead, Plaintiff claims that while she is periodically capable of performing her sedentary work, she is not capable of sustaining such performance due to missing work and being off-task during work because of her alleged disability. (*Id.* at 3.) Plaintiff also filed an affidavit of Dr. Ober in which he disputes the alleged exchange between himself and Dr. Berg. (Doc. 24.) Defendant timely responded and refuted Plaintiff's allegations. (Doc. 25.) This matter is now ripe for the Court's determination.

**STANDARDS**

When a party objects to a magistrate judge's findings, the district court must

6

"make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

Unlike a typical motion for summary judgment, "the usual tests . . . , such as whether a genuine dispute of material fact exists, do not apply" to the Court's independent review of an ERISA administrative decision. *Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (citations and internal quotation marks omitted). Instead, the Court must determine: (1) whether the decision was wrong, on a *de novo* review; (2) if it was wrong, whether it was discretionary; and (3) if the decision was wrong and discretionary, whether it was arbitrary and capricious, taking into account whether the administrator was acting under a conflict of interest. *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195–96 (11th Cir. 2010) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008), and noting that *Glenn* altered prior Eleventh Circuit precedent only to the extent that *Glenn* requires courts to weigh the existence of a conflict as one factor in determining whether the administrator's decision was arbitrary and capricious).

## DISCUSSION

For the reasons set forth below, the Court finds that Defendant's decision to deny Plaintiff's benefits claim was correct. Further, even if the Court were to disagree with

Defendant's discretionary[5] decision, which it does not, the Court finds that the decision was not arbitrary and capricious—even when taking into account the fact that Defendant was acting as both the decision maker and the payor of the benefits.

**I.      Defendant's Decision Was Not Wrong**

The Court agrees with Magistrate Judge Morris that the record does not support Plaintiff's contention that she has a disability preventing her from doing the normal work of a therapist. (Doc. 22, p. 27.) Plaintiff is undeniably asthmatic and this has undoubtedly affected her ability to work at her particular employer during certain times. However, the Policy does not define being "disabled" as having a long-term illness. Instead, the Policy's definition of "disabled"—one who cannot work in one's occupation as it is normally performed—excludes Plaintiff.

Plaintiff's Objection rests too much on the notion that if the Court would re-weigh Dr. Ober's opinion, the result would turn in her favor. (*See* Doc. 23, p. 3.) This is not the case. First, Dr. Ober himself stated that Plaintiff's prognosis was "good" and that if she avoided triggers and took her medications, she would improve. (AR, p. 1070.) This opinion does nothing to indicate that Dr. Ober believed that Plaintiff was unable, absent her claimed specific workplace triggers, to perform the regular work of a therapist. Further, in the paperwork Dr. Ober submitted to support Plaintiff's appeal, Dr. Ober stated that Plaintiff could sit, stand, and walk for "at least six hours" out of the workday. (*Id.* at 768.) While Dr. Ober also stated that Plaintiff would sometimes need to take unscheduled breaks, presumably when she encounters an asthma trigger, even this qualification does not dispel the fact that Plaintiff could normally sit, stand, and walk—

---

[5] It is undisputed that Defendant's decision was discretionary. Therefore, the Court will not discuss the second step of the three-step analysis.

the most common actions of a sedentary worker—for the majority (if not the totality) of the workday. Thus, Dr. Ober's opinion is, in fact, partially consistent with Defendant's assertion that Plaintiff is not "disabled" as defined by the Policy.

Furthermore, Dr. Ober's opinion is not the only opinion properly considered here. Plaintiff objects to Magistrate Judge Morris' recommendation insofar as it relies on Dr. Yergin's opinion that Plaintiff was capable of "sedentary work." (Doc. 23, p. 3.) Plaintiff visited Dr. Yergin multiple times and underwent examination and testing by him. (AR, pp. 349, 351, 563.) Dr. Ober even asked Dr. Yergin to write Plaintiff a doctor's note for her employer in lieu of writing it himself. (*Id.* at 369, 1074.) Dr. Yergin was therefore familiar with Plaintiff's condition.

The crux of Plaintiff's argument, then, rests on Defendant's alleged error in failing to provide Dr. Yergin with "vocational substance or explanation" related to Plaintiff's inability to work in her particular workplace, which was "an uncontrolled environment . . . [where Plaintiff was] expos[ed] to fumes, perfumes, odors, irritants" and other triggers. (Doc. 19, p. 12.) As Magistrate Judge Morris rightly noted, however, "Dr. Yergin did not need a description of Kennedy's work environment to render a thoughtful opinion as to whether she would be able to perform her sedentary occupation in an environment that was free of respiratory irritants." (Doc. 22, p. 29.) What Plaintiff implicitly concedes in making this argument is that without those irritants at her workplace, there is nothing about her occupation as a therapist that her asthma prevents her from doing. Dr. Yergin's opinion reflected that fact. Plaintiff's Objection that "employer tolerances as to absenteeism or being on task" were not considered therefore misses the mark.[6] (Doc.

---

[6] The Court notes that Plaintiff's Objection is entirely unsupported by citations to the record or to case law. (Doc. 23.) Local Rule 3.01 provides that parties seeking relief

23, p. 3.) Whether Plaintiff would be absent or off-task when exposed to the alleged triggers in her workplace is irrelevant because her specific workplace and its specific triggers are irrelevant under the constraints of the Policy, which provides that the relevant consideration is how the occupation is normally performed in the national economy.

Plaintiff's Objection also contends that Magistrate Judge Morris' recommendation "place[d] much significance upon the opinions of Dr. Berg," specifically on Dr. Berg's assertion that Dr. Ober refused to speak with him per Plaintiff's instructions. (Doc. 23, p. 1.) Magistrate Judge Morris found that, taking into account the opinions of Drs. Ober, Yergin, and Berg, Plaintiff did not demonstrate that "she is unable to perform her duties as a therapist in a work environment" other than her employer's. (Doc. 22, p. 29.) Magistrate Judge Morris further noted that it was proper to rely on Dr. Berg's opinion where it conflicted with Dr. Ober's opinion because one is not required to give special deference to the treating physician. (*Id.* at 30 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).) This is proper even where the consulting physician has not personally examined the patient. (*Id.* (citing *Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1359 (M.D. Fla. 2004)).) The Court finds that Magistrate Judge Morris' consideration of the opinions of all of the doctors on which Defendant relied was thorough and appropriate. (*Id.* at 27–31.) The Court therefore adopts Magistrate Judge Morris' well-reasoned analysis and conclusions.

---

from the Court must include some statement of legal authority. It is too difficult for the Court to comb the record to find support for Plaintiff's arguments, particularly the specific details Plaintiff states, such as statistics. (*See* Doc. 23, p. 3.)

Nonetheless, the Court has considered Plaintiff's argument that she is only periodically able to perform her work. However, the Court finds that this argument does not assist Plaintiff, for it concedes (at least partially) that Plaintiff is indeed able to do her job as a therapist, which is the end of the inquiry.

10

Further, though the Court has considered[7] Plaintiff's newly added evidence—Dr. Ober's dispute of the alleged interaction between himself and Dr. Berg[8]—the Court does not find anything in Dr. Ober's affidavit that changes its agreement with Magistrate Judge Morris' recommendation. Plaintiff contends that "Dr. Berg's misrepresentation significantly alters the finder of fact's impression in this case." (Doc. 23, p. 2.) The Court does not agree. Dr. Berg made the independent finding that Plaintiff's restrictions were unsupported by her medical records and that there were no occupational barriers preventing Plaintiff from doing her job. (AR, p. 1359.) The Court does not need to consider the content of Dr. Berg and Dr. Ober's conversation to arrive at the conclusion that Dr. Berg's opinion was correct. Whatever communication occurred between the doctors, it does not change Dr. Berg's independent finding, nor does it affect the Court's agreement with that finding.[9]

Finally, it is undisputed by Plaintiff that she did not seek treatment for her asthma for the five-month period beginning in early August and ending in late December 2010. This fact further supports the Court's finding that Defendant's upholding of the denial was correct because Plaintiff failed to comply with the requirement of the Policy that she receive regular medical care for her illness. (Doc. 22, pp. 31–32.)

Thus, on consideration of the entire record, Plaintiff's Objection, and Magistrate Judge Morris' recommendation, the Court independently finds that Defendant's denial of Plaintiff's claim was correct. Plaintiff's illness does not make her disabled within the

---

[7] *See supra* note 2.
[8] Doc. 24.
[9] Further, Plaintiff does not dispute that Dr. Berg contacted Dr. Ober to seek input on Plaintiff's restrictions. This fact—regardless of whether Plaintiff actually instructed Dr. Ober to remain silent—supports the Court's finding that Defendant took steps to ensure that its decision was reasonable and circumspect.

meaning of the Policy.

## II.     Defendant's Decision Was Not Arbitrary and Capricious

Because the Court has found *de novo* that Defendant's denial of Plaintiff's claim was correct, the Court may end its analysis there and grant summary judgment in Defendant's favor. However, out of an abundance of caution, the Court has also considered whether Defendant's decision was arbitrary and capricious. The Court agrees with Magistrate Judge Morris that Defendant had a reasonable basis for its decision in the record; the decision is therefore not arbitrary and capricious.

The record supports the notion that Defendant took Plaintiff's claim and subsequent appeal seriously and investigated thoroughly. Defendant paid Plaintiff temporary benefits while investigating her claim. Defendant solicited many documents and opinions from both of Plaintiff's treating physicians, as well as statements from Plaintiff herself. When Plaintiff appealed, Defendant sought further review from an external specialist. Defendant conducted a significant investigation, as the nearly 1400-page record attests. The findings that Defendant made are well-supported by that record.[10] Defendant acknowledged Plaintiff's symptoms but found that they did not render Plaintiff unable to perform the regular work of a therapist, excluding her from coverage under the Policy. Therefore, the Court agrees with Magistrate Judge Morris' finding that this complete record provides a reasonable basis for Defendant's conclusion

---

[10] The Court's finding that Defendant had a reasonable basis for denying Plaintiff's claim takes into account the undisputed existence of a conflict of interest on Defendant's part. Though Defendant was both the decision maker and the payor of the benefits, there is "no evidence of inappropriate claim handling or a pattern of biased decisions" by Defendant, and the fact that Defendant sought independent review of Plaintiff's appeal also rebuts any claim of self-interested decisionmaking. (Doc. 22, p. 33.) Thus, while the Court takes Defendant's conflict of interest into account, it does not find that the conflict interfered with Defendant's decision so as to make it arbitrary and capricious.

that Plaintiff was not disabled within the meaning of the Policy. (Doc. 22, p. 33.) Having found that Defendant's denial of Plaintiff's claim was neither wrong nor arbitrary and capricious, and having fully considered and rejected Plaintiff's Objection, the Court adopts Magistrate Judge Morris' recommendation and grants summary judgment in favor of Defendant.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Response and Objection to Report and Recommendation (Doc. 23) is **OVERRULED**.

2. Magistrate Judge Morris' Report and Recommendation (Doc. 22) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

3. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 18) is **GRANTED**.

4. Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 19) is **DENIED**.

5. The Clerk is hereby directed to enter judgment in accordance with this Order and to close this case.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on September 5, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

The Honorable Thomas E. Morris

Counsel of Record